**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0256-WJM

DWAN R. PETTI,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE AND
REMANDING TO COMMISSIONER**

This Social Security benefits appeal is brought under 42 U.S.C. § 405(g). Plaintiff Dwan R. Petti ("Plaintiff") challenges the final decision of Defendant, the Acting Commissioner of Social Security ("Defendant"), denying her application for disability insurance benefits. After a hearing, the denial was affirmed by an administrative law judge ("ALJ"), who ruled that Plaintiff was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for disability benefits is vacated and this case is remanded for further proceedings consistent with this order.

## I. BACKGROUND

Plaintiff was born on July 15, 1969, and was 42 years old on the alleged disability

onset date of December 20, 2011.[1]  (Administrative Record ("R.") (ECF No. 11) at 71.) Plaintiff graduated from high school, and previously worked as an accounting clerk and office manager.  (R. at 41, 198.)

Plaintiff applied for disability insurance benefits on January 17, 2012.  (R. at 22.) Plaintiff alleged that she is disabled due to the following conditions: bipolar disorder, depression, post-traumatic stress disorder, fatigue, and partial liver failure.  (R. at 26, 71.)  Her application was initially denied on May 29, 2012.  (R. at 22.)  Plaintiff requested and received a hearing before ALJ Kathryn D. Burgchardt.  (R. at 37, 88.) On May 10, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 20, 2011, through her date last insured of March 31, 2012.[3]  (R. at 24.)

At step two, the ALJ found that, through the date last insured, Plaintiff suffered

---

[1] Plaintiff, through her attorney, submitted a brief amending the alleged onset date to January 1, 2012.  (R. at 41, 198.)  The ALJ noted Plaintiff's attempt to amend the date, but continued to consider December 20, 2011 to be the alleged onset date in her written decision. (R. at 32.)

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] Throughout the record and within the ALJ's decision, the date last insured is sometimes referred to as March 31, 2012 and sometimes referred to as March 31, 2013.  (*See, e.g.*, R. at 22, 24, 29, 32, 40, 70, 101.)  March 31, 2012 appears to be the correct date, but it is not entirely clear.

from "the following severe impairments: bipolar disorder, depression, post-traumatic stress disorder (PTSD), and liver disease." (*Id.*) The ALJ did not find that any other claimed condition was a severe impairment. (*See id.*)

At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 25.) In so finding, the ALJ found that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace. (*Id.*) However, the ALJ found that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). (R. at 26–30.) The ALJ concluded that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] required work which is unskilled, with a svp skill level of 1-2, not in close proximity to co-workers or supervisors (meaning that she could not function as a member of a team), and minimal to no direct contact with the public.

(R. at 26.) Then, at step four, the ALJ concluded that, through the date last insured, Plaintiff was unable to perform any of her past relevant work. (R. at 30.)

At step five, the ALJ found that, through the date last insured, other jobs existed in the national economy that Plaintiff could have performed with the RFC assessed. (R. at 31.) Those jobs included production assembly worker, electronics worker, and dry cleaner. (*Id.*) Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to benefits. (R. at 32.)

3

Plaintiff appealed to the Social Security Appeals Council, which denied review. (R. at 9.) Accordingly, the ALJ's May 10, 2013 decision is the final administrative action for purposes of review. Plaintiff then filed this action seeking review of the ALJ's decision. (ECF No. 1.)

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Plaintiff's appeal raises numerous alleged errors that she claims require reversal, including: (1) the ALJ erred as a matter of law in weighing the treating physicians' opinions; (2) the ALJ's hypotheticals to the vocational expert ("VE") did not capture Plaintiff's mental and physical limitations caused by her impairments; (3) the ALJ's

assessment of the RFC was not based on substantial evidence and misapplies the law; (4) the ALJ erred by finding petitioner did not meet or equal Listing 12.04 for Bipolar Disorder with Depression; and (5) the ALJ erred as a matter of law in weighing Plaintiff's credibility. (ECF No. 14.) The Court will consider each of these arguments in turn.

### A.     Treating Physicians' Opinions

Plaintiff argues that the ALJ erred in weighing the opinions of her treating psychiatrist, Dr. Jeffrey Harazin, MD, and her treating psychologist, Dr. James Mylar, PhD. (ECF No. 14 at 7, 23.) As of January 2013, Dr. Harazin had treated Plaintiff since 2006, while Dr. Mylar treated Plaintiff from 2010 through 2012. (R. at 264, 360, 493.) Each of these doctors presented findings in the record including opinions that Plaintiff suffered from bipolar disorder and depression. (R. at 361, 371.)

The analysis of how much weight to accord a treating physician opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.[4]

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 99-2p, 1996 WL 374188 (July 2, 1996)).

---

[4] Dr. Mylar is a psychologist and not a physician. (ECF No. 14 at 7.) Nevertheless, the treating physician rule applies to treating psychologists. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173–74 (10th Cir. 2005) (applying the treating physician rule to an ALJ's analysis of a treating psychologist's opinion).

5

A finding that a treating source's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96–2p, 1996 WL 374188 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

The ALJ did not perform the sequential analysis outlined above. Rather, the ALJ accorded "little weight" to Dr. Hazarin's opinions and "limited weight" to Dr. Mylar's opinions, without first considering whether they were to be given controlling weight. (R. at 29.) The Tenth Circuit has held that the language "limited weight" indicates that an ALJ is effectively rejecting a medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The Court finds that the ALJ effectively rejected the medical opinions of Drs. Harazin and Mylar in Plaintiff's case.

An ALJ may choose to reject a treating physician's medical opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). However, he or she may do so "only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Id.* (emphasis in original). In rejecting the opinions of Drs. Harazin and Mylar, the ALJ did not cite contradictory medical evidence. (*See* R. at 29–30.) The ALJ noted that a state agency psychiatric consultant, James J. Wanstrath, evaluated the record and found that the evidence was insufficient to fully evaluate the mental claim. (R. at 29.) However, the ALJ deliberately accorded "no weight" to Wanstrath's opinion of insufficiency. (*Id.*) Instead, the ALJ rejected the opinions of the treating doctors through the use of credibility judgments, lay opinion and

speculation.

The ALJ presented two reasons for rejecting Dr. Harazin's opinions. First, Harazin met with Plaintiff's attorney to fill out paperwork for the disability claim. (*Id.*) The ALJ found that this "diminishes the independence of the doctor's opinions and does not enhance the reliability of the assessment." (*Id.*) The ALJ is implying that Dr. Harazin would have provided a different medical opinion regarding Plaintiff, had he not met with Plaintiff's lawyer. There is no evidence in the record that an attorney influenced the medical opinions. This is pure speculation by the ALJ and this is an improper basis on which to reject a treating physician's assessment. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (rejecting as speculative the ALJ's conclusion that a medical report was simply an act of courtesy to a patient).

Second, the ALJ argued that Dr. Harazin provided no reference to specific clinical findings or other support for the limitations found in his opinion. (R. at 29.) The ALJ went on to say that the record lacks "longitudinal treatment notes which document a sustained disabling mental impairment." (R. at 29–30.) But, the record contains seventeen pages of treatment notes, provided by Dr. Harazin. (R. at 248–264). These notes outline Plaintiff's symptoms and a continued diagnosis of Bipolar Disorder over a span of several years. (*Id.*) In finding these notes inadequate to support Dr. Harazin's opinions, the ALJ is relying on her lay opinion, which may not be used to *reject* a treating physician's assessment. *McGoffin*, 288 F.3d at 1252.

The ALJ also presented two primary reasons for rejecting Dr. Mylar's opinions. First, at the time Dr. Mylar completed the questionnaire in March 2013, he had not seen Plaintiff since March 2012. (R. at 29.) The ALJ "wonders how he could be certain

7

whether such extreme limitations were still present [in 2013]." (*Id.*)  However, Plaintiff's date last insured was March 31, 2012.  (R. at 24).  Plaintiff's medical condition is only relevant from the alleged onset date through her date last insured.  (*See* R. at 24–32.)  Dr. Mylar treated Plaintiff during that time period and his questionnaire specifies that his opinions are effective only through that time period.  (R. at 504.)  As such, this seemingly unfounded credibility determination is an improper basis on which to reject a treating psychologist's opinions.

Second, the ALJ argues that Dr. Mylar's findings are "brief and conclusory," not based on clinical findings, and are not accompanied by contemporaneous treatment notes.  (R. at 29–30.)  Again, this is not the type of contradictory medical evidence needed to reject an opinion by a treating psychologist.  Furthermore, the record shows that Plaintiff had been treated in Dr. Mylar's office 31 times.  (R. at 522.)  Dr. Mylar's opinions were based on these meetings.  (R. at 360.)  Under Tenth Circuit precedent, a psychological opinion may rest on observed signs and symptoms, such as those observed over the course of these 31 meetings.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Additionally, it is important to remember that the medical opinions of Plaintiff's treating sources are uncontradicted by other medical professionals.  An ALJ "may not pick and choose which aspects of an uncontradicted medical opinion to believe." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

In reaching her assessment as to Plaintiff's RFC, the ALJ focused on Plaintiff's

activities of daily living.[5] (R. at 28–29.) Although such activities may play a role in the ALJ's decision, they are not sufficient to reject medical opinions from treating sources. More importantly, the ALJ did not include the daily activities among her reasons to give "little" and "limited" weight to the medical opinions. (*Id.*)

Because the Court concludes that the ALJ did not follow the correct legal standards in considering the opinion of Plaintiff's treating psychiatrist and treating psychologist, the Court reverses and remands for further proceedings.

**B.    The Hypotheticals Presented to the VE and the RFC**

At steps four and five of her analysis, the ALJ presented the VE with two hypotheticals; yet, the VE only testified that there would be available jobs for an individual under the first of the two hypotheticals. (R. at 52–54.) Plaintiff claims that the ALJ's hypotheticals did not include all of Plaintiff's limitations. (ECF No. 14 at 25.) Specifically, the ALJ's step three analysis included a finding that Plaintiff had "moderate difficulties" in concentration, persistence or pace ("CPP"). (R. at 25.) However, the first hypothetical did not mention these moderate limitations in CPP. (R. at 52; ECF No. 18 at 5.)

The first hypothetical exactly mirrors the ALJ's assessment of Plaintiff's RFC, and, as such, the moderate limitations in CPP are also absent from the RFC. (R. at 26, 52.) As a separate issue, Plaintiff claims that the ALJ's assessment of Plaintiff's RFC is not based on substantial evidence. (ECF No. 14 at 21.) The Court will discuss

---

[5] The ALJ, among other daily activities, points out that Plaintiff participates in "homeschooling her 12 year old daughter." (R. at 28.). The record indicates that Plaintiff does not home school her daughter, rather, her daughter attends school online. (R. at 43–44, 203.)

Plaintiff's claim as to the RFC in conjunction with her claim as to the hypotheticals because both claims depend upon whether the limitations in CPP were improperly absent from certain steps of the ALJ's evaluation.

A Social Security Ruling states that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85–15, 1985 WL 56857, at *6. The Tenth Circuit, in an unpublished opinion, discussed this Ruling and held that "[m]oderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a [vocational expert]." *Jaramillo v. Colvin*, 576 F. App'x 870, 875–76 (10th Cir. 2014) (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); and *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)); *see also Haga*, 482 F.3d at 1208 ("[A] moderate impairment is not the same as no impairment at all.").

In *Jaramillo*, the ALJ found at step three that the plaintiff was moderately limited in his ability to carry out instructions, attend and concentrate, and work without supervision. 576 F. App'x at 876. The Tenth Circuit rejected the Commissioner's argument that the ALJ's RFC limitation to simple, routine, and repetitive tasks sufficiently accounted for these impairments, consequently finding that the RFC was unsupported by substantial evidence. *Id.*; *see also Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (limitation to "simple, unskilled job tasks" is insufficient to incorporate "moderate difficulties maintaining concentration, persistence, or pace"). Additionally, in *Frantz*, the ALJ—in his step three analysis—found that the plaintiff had "moderate difficulties in concentration, persistence and pace." *Frantz*, 509 F.3d at 1303 n.3. However, the ALJ did not include those limitations in his later RFC determination.

*Id.* The Court found that this was inconsistent and directed the ALJ to address the issue on remand. *Id*.

Taken together, these cases clarify that the question whether a limitation must be incorporated into an RFC—and into a hypothetical question posed to a VE—is not resolved merely because the limitation was identified in step three of the analysis. Therefore, where the ALJ finds that Plaintiff suffered from a certain limitation, that limitation must be considered by the ALJ in formulating the RFC.

The RFC specifies that Plaintiff required work which was unskilled. (R. at 26.) However, the Court has held that "unskilled" work is not synonymous with work that may be performed by someone with mental limitations. *Flakes v. Colvin*, 2015 WL 4387892, at *3 (D. Colo. July 17, 2015) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1491–92 (10th Cir. 1991)); *see also Chapo*, 682 F.3d at 1290 & n.3 (10th Cir. 2012) ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions—which are not skills . . . .").

The RFC also states that Plaintiff could not work in close proximity to co-workers or supervisors, and needed minimal to no direct contact with the public. (R. at 26.) On its face, this portion of the RFC does not account for limitations in CPP. Furthermore, the ALJ's analysis does not indicate that she accounted for limitations in CPP in finding this portion of the RFC.

The Court cannot determine, from the ALJ's decision, whether the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, and pace that the ALJ found at step three. The first hypothetical presented to the VE at step five was identical to the RFC. "[T]estimony elicited by hypothetical questions that do not

relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner]'s decision." *Haga*, 482 F.3d at 1208.  As such, the ALJ did not have substantial evidence from which to conclude that sufficient jobs exist for an individual with all of Plaintiff's limitations.  The Court finds, therefore, that the ALJ's decision must be vacated for reconsideration.

**C.     Additional Arguments**

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments Plaintiff raises.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).  The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments.  The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

**D.     Plaintiff's Letter to the ALJ**

After the ALJ's decision, Plaintiff sent a letter directly to the ALJ.  (R. at 202–04.) The Court has reviewed this letter, which is emotionally charged and critical of the ALJ. (*See id.*)  The Court has the authority to recommend a new ALJ be assigned upon remand.  *Williams v. Astrue*, 2011 WL 2036482, at *1 (D. Colo. May 24, 2011) (citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)).  However, the Court trusts that the

ALJ will not allow this letter to interfere with her independent decision-making duties and process on remand. Accordingly, the Court does not recommend that the Commissioner assign the case to a different ALJ.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 20th day of January, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge